UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JOEY LEE, | Case No. 22-CV-1593 (PJS/DJF) |
| Plaintiff, | |
| v. | ORDER |
| SEASONS HOSPICE,<br>a Minnesota non-profit corporation, | |
| Defendant. | |

---

| | |
|---|---|
| MARY ROBSAHM and<br>KELLY MOEN, | Case No. 22-CV-1923 (PJS/JFD) |
| Plaintiffs, | |
| v. | |
| SEASONS HOSPICE,<br>a Minnesota non-profit corporation, | |
| Defendant. | |

---

Gregory M. Erickson and Vincent J. Fahnlander, MOHRMAN, KAARDAL & ERICKSON, P.A., for plaintiffs.

Christopher J. Van Rybroek, THE CINCINNATI INSURANCE COMPANY, for defendant.

In these lawsuits, plaintiffs Joey Lee, Mary Robsahm, and Kelly Moen—three former employees of defendant Seasons Hospice ("Seasons")—assert religious- and disability-discrimination claims arising from their terminations for failure to comply with Seasons' COVID-19 vaccination mandate. These matters are before the Court on

Seasons' motions to dismiss plaintiffs' first amended complaints.  For the reasons that

follow, the Court grants in part and denies in part Seasons' motions.

## I.  BACKGROUND[1]

Lee worked for Seasons as a hospice social worker.  Am. Compl. ¶ 9, Case No.

22-CV-1593 (PJS/DJF), ECF No. 14 [hereinafter "Lee Am. Compl."].  She received

positive reviews that praised her for patient safety and proper use of personal

protective equipment ("PPE").  *Id.* ¶ 25.  Moen worked for Seasons as a nurse and

received "an excellent job performance review" prior to being terminated.  Am. Compl.

¶¶ 11, 34, Case No. 22-CV-1923 (PJS/JFD), ECF No. 14 [hereinafter "Moen/Robsahm

Am. Compl."].  Robsahm worked for Seasons as a grief counselor.  *Id.* ¶ 10.  She, too,

received positive reviews, which described her as "compassionate" and praised her for

providing "exceptional customer service."  *Id.* ¶ 27.

In early- and mid-2021, Seasons encouraged—but did not require—its employees

to get vaccinated for COVID-19.  Lee Am. Compl. ¶ 14; Moen/Robsahm Am. Compl.

¶ 16.  Plaintiffs opted not to get vaccinated, in part for religious reasons.  Lee believes

that she must keep her body "pure and in the perfect image of God" and that receiving

a COVID-19 vaccine would "defile her body."  Lee Am. Compl. ¶ 24.  Robsahm also

believes that being vaccinated would "defile her body," which she believes she must

---

[1]     The Court treats plaintiffs' factual allegations as true for purposes of ruling on
Seasons' motions to dismiss.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

treat as "a Temple of the Holy Spirit." Moen/Robsahm Am. Compl. ¶ 25. In addition, Lee's and Moen's religious beliefs forbid them from using products that are developed or produced using cells from fetuses who were aborted. *Id.* ¶ 30; Lee Am. Compl. ¶ 24. According to plaintiffs, the COVID-19 vaccines that were available while they were employed by Seasons were made or tested using such cells. Moen/Robsahm Am. Compl. ¶ 30; Lee Am. Compl. ¶ 24.

Medical considerations also deterred plaintiffs from getting vaccinated for COVID-19. Lee had "suffered nausea, dizziness and weakness, paralysis, and other effects requiring hospitalization after a previous vaccination" and was "at risk for suffering strokes" if she was injected with a COVID-19 vaccine. Lee Am. Compl. ¶ 20. Moen vaguely refers to "autoimmune disorders" and alleges that she had "previously" had Bell's Palsy and harbored "serious concerns" about that condition recurring due to a COVID-19 vaccination. Moen/Robsahm Am. Compl. ¶ 35. Robsahm "previously had cancer" and was in remission, and her immune system was weakened. *Id.* ¶ 22. According to Robsahm, a COVID-19 vaccine "could potentially trigger a return" of her cancer, and her doctor recommended against getting vaccinated. *Id.*

Although the complaints leave the timing unclear, plaintiffs allege that at some point they informed Seasons of the conflict between their religious beliefs and being vaccinated. Lee Am. Compl. ¶ 62; Moen/Robsahm Am. Compl. ¶¶ 32, 75. They also

informed Seasons of their medical reasons for refusing COVID-19 vaccinations.  Lee Am. Compl. ¶ 21; Moen/Robsahm Am. Compl. ¶¶ 23, 32.

According to plaintiffs, the "status quo was working."  Lee Am. Compl. ¶ 15; Moen/Robsahm Am. Compl. ¶ 17.  All of the plaintiffs continued to provide care at Seasons while unvaccinated.  Lee Am. Compl. ¶ 11; Moen/Robsahm Am. Compl. ¶ 13. Seasons acknowledged in mid-2021 that preventative measures had minimized the spread of COVID-19 among its employees and patients, and that social distancing, hand hygiene, and masking had "essentially eliminated the typical viral burden" seen during the preceding winter.  Lee Am. Compl. ¶ 18; Moen/Robsahm Am. Compl. ¶ 20.

On September 8, 2021, however, Seasons announced that it would require all of its employees and volunteers to receive all doses of a COVID-19 vaccine by October 31, 2021.  Lee Am. Compl. ¶ 15; Moen/Robsahm Am. Compl. ¶ 17.  Seasons informed employees and volunteers that there would be "no medical, religious or personal exemptions to the Seasons Hospice COVID-19 vaccination policy." Lee Am. Compl. ¶ 15; Moen/Robsahm Am. Compl. ¶ 17.  Seasons said that it was imposing a vaccination mandate in order to protect Seasons' patients, employees, and volunteers, and because Seasons anticipated that the Centers for Medicare & Medicaid Services ("CMS") would soon issue a rule that would require Seasons and other healthcare facilities receiving federal funds to ensure that all staff were vaccinated for COVID-19.  Van Rybroek Decl.

Ex. A, Case No. 22-CV-1923 (PJS/JFD), ECF No. 10-1 at 2 [hereinafter "Seasons Vaccination Policy"].

Plaintiffs refused to be vaccinated and were fired. Lee Am. Compl. ¶ 29; Moen/Robsahm Am. Compl. ¶¶ 38–39. Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and obtained right-to-sue letters. Lee Am. Compl. ¶ 29; Moen/Robsahm Am. Compl. ¶¶ 38–39. Plaintiffs then commenced these actions.

The two operative complaints each assert the same four causes of action: religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I) and the Minnesota Human Rights Act ("MHRA") (Count II); unlawful examination and discrimination under the Americans with Disabilities Act ("ADA") (Count III); and breach of contract or, alternatively, promissory estoppel (Count IV).

These matters are now before the Court on Seasons' motions to dismiss the complaints pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. At the hearing on Seasons' motions, plaintiffs agreed to voluntarily withdraw their claims for breach of contract or, alternatively, promissory estoppel (Count IV). For the reasons stated on the record at the hearing and explained below, the Court grants in part and denies in part Seasons' motions to dismiss the remaining claims.

## II.  ANALYSIS

### A.  Standard of Review

To survive a motion to dismiss for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Lustgraaf*, 619 F.3d at 872–73.

When ruling on a Rule 12(b)(6) motion, a court must refrain from considering matters "outside the pleadings." *Noble Sys. Corp. v. Alorica Cent., L.L.C.*, 543 F.3d 978, 982 (8th Cir. 2008).  But documents "necessarily embraced by the complaint" are not outside the pleadings.  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)).  A court may thus consider "matters incorporated by reference or integral to the claim," as well as "items subject to judicial notice" and "matters of public record,"

without converting a motion to dismiss into a motion for summary judgment. *Id.*

(quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

## B. Count I—Religious Discrimination Under Title VII

Title VII of the Civil Rights Act of 1964 forbids an employer "to discharge any

individual, or otherwise to discriminate against any individual . . . because of such

individual's . . . religion[.]"  42 U.S.C. § 2000e–2(a)(1).  "Religion" includes "all aspects

of religious observance and practice, as well as belief, unless an employer demonstrates

that he is unable to reasonably accommodate to an employee's or prospective

employee's religious observance or practice without undue hardship on the conduct of

the employer's business."  42 U.S.C. § 2000e(j).

Seasons moves to dismiss on the ground that it had no duty to offer an

accommodation to plaintiffs because any accommodation that would have allowed

plaintiffs to continue working while unvaccinated would have caused undue hardship.

*See Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam).  Undue

hardship is an affirmative defense, and a plaintiff generally does not have to plead the

non-existence of such a defense.  *See Adeyeye v. Heartland Sweeteners, L.L.C.*, 721 F.3d 444,

448–49 (7th Cir. 2013).  But an affirmative defense may nevertheless be the basis of

dismissal under Rule 12(b)(6) if the defense is "apparent on the face of the complaint,"

including "the materials properly before [the Court] on a motion to dismiss . . . ." *Noble*,

543 F.3d at 983.

When this matter was briefed and heard, Eighth Circuit precedent indicated that

an accommodation caused "undue hardship" if the accommodation required the

employer to "bear more than a de minimis cost," relying on language from *Trans World*

*Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977).  *See Seaworth*, 203 F.3d at 1057–58; *Brown*

*v. Polk County*, 61 F.3d 650, 655 (8th Cir. 1995) (en banc).  But the Supreme Court

recently repudiated lower courts' interpretation of "undue hardship" as "any effort or

cost that is 'more than . . . *de minimis*.'"  *Groff v. DeJoy*, 600 U.S. 447, 454 (2023).  The

Court held that, to establish "undue hardship," an employer "must show that the

burden of granting an accommodation would result in substantial increased costs in

relation to the conduct of its particular business."  *Id.* at 470.

In support of its claim of undue hardship, Seasons mainly points to a CMS

regulation that required Seasons, as a recipient of federal funds, to implement a

vaccination mandate for its staff.  *See* Medicare and Medicaid Programs; Omnibus

COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61,555, 61,569–71 (Nov. 5, 2021).

According to Seasons, accommodating plaintiffs' request to continue working while

unvaccinated would have risked noncompliance with the CMS rule.  And

noncompliance, Seasons says, would have imperiled Seasons' ongoing receipt of federal

-8-

funds and exposed Seasons to possible monetary penalties.  Seasons further argues that

accommodating plaintiffs would have caused undue hardship because it would have

increased the risk of infection for Seasons' employees and patients, conflicted with a

business partner's requirement that its contractors' employees be vaccinated, and

damaged Seasons' reputation for safety.

Seasons' reliance on the CMS rule is misplaced.  That rule not only allowed but

"*require[d]* providers to offer medical and religious exemptions[.]"  *Biden v. Missouri*, 142

S. Ct. 647, 651 (2022) (per curiam) (emphasis added).  The rule recognized that "there

are some individuals who might be eligible for exemptions from the COVID-19

vaccination requirements in this [rule] under existing Federal law," and accordingly

required "that providers and suppliers included in this [rule] establish and implement a

process by which staff may request an exemption from COVID-19 vaccination

requirements based on an applicable Federal law."  86 Fed. Reg. at 61,572.  And thus,

had Seasons granted a religious or medical exemption to plaintiffs, Season would not

have suffered any loss of federal funding or been subject to any monetary penalties.

And because the CMS rule required Seasons to "establish and implement a process by

which staff may request an exemption from COVID-19 vaccination requirements based

on an applicable Federal law,"*id.*, processing plaintiffs' exemption requests would have

required no "expense and trouble" beyond what the rule itself required.  Seasons'

reliance on *Seaworth*—a case in which the employee's requested accommodation would have required the employer to violate the Internal Revenue Code—is therefore unavailing.

It is true, as Seasons argues, that employing unvaccinated workers might have created undue hardship for other reasons. But the other reasons cited by Seasons—risk of infection to staff and patients, injury to Seasons' reputation for safety, and loss of a business partnership—cannot justify dismissal of plaintiffs' claims, for at least two reasons:

First, the Court can consider only those materials that are properly before it on a motion to dismiss, including public records and materials embraced by the complaints. *See Noble*, 543 F.3d at 983. In support of its argument about the potential loss of a business partner, Seasons points only to its own COVID-19 vaccination policy, which states that Seasons was motivated in part by the business partner's decision to require its contractors' employees to be vaccinated. This policy is embraced by the complaint, and the parties agree that it is authentic, and thus the Court can rely on the fact that Seasons *made the statements* contained in the policy. *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003). But the Court cannot treat the statements as *true*. *See LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021). And thus, in ruling on Seasons' motions to dismiss, the Court cannot assume that a business partner in fact required

-10-

that Seasons' staff be vaccinated or that any such demand in fact motivated Seasons'

own vaccination mandate.

Second, and relatedly, whether a given accommodation would cause "undue

hardship" is a fact-intensive inquiry.  *Groff*, 600 U.S. at 470–71 ("courts must apply the

test in a manner that takes into account all relevant factors in the case at hand, including

the particular accommodations at issue and their practical impact in light of the nature,

size and operating cost of an employer" (cleaned up)); *Harrell v. Donahue*, 638 F.3d 975,

979 (8th Cir. 2011) ("Determinations of what constitutes an 'undue hardship' must be

made on a case-by-case basis.").  It may be true that accommodating plaintiffs by

offering religious or medical exemptions would have increased the risk to staff and

patients or damaged Seasons' reputation—and it may be true that the increased risks or

reputational damage would have been significant enough to create an undue

hardship—but these are matters that cannot be resolved without a factual record.  The

Court therefore denies Seasons' motions to dismiss with respect to plaintiffs' Title VII

claims.

### C.  *Count II—Religious Discrimination Under the MHRA*

Each plaintiff also asserts a religious-discrimination claim under the MHRA.

Like plaintiffs' Title VII claims, plaintiffs' MHRA claims rest on allegations that Seasons

failed to accommodate their religious beliefs when it refused to grant them an

exemption to the vaccination mandate.  Seasons moves to dismiss the MHRA claims,

making not only the arguments that it made in moving to dismiss the Title VII claims

(arguments that the Court has already rejected), but the additional argument that the

MHRA does not impose a duty to accommodate religion.

The MHRA forbids an employer to "discharge" an employee "because of" the

employee's "religion," but nowhere does the MHRA expressly mention a duty to

accommodate religion.  *See* Minn. Stat. § 363A.08, subd. 2.  The Minnesota Supreme

Court has yet to decide whether a plaintiff may recover for religious discrimination

under the MHRA on a failure-to-accommodate theory.  "If the Minnesota Supreme

Court has not spoken on a particular issue," a federal court "must attempt to predict

how the Minnesota Supreme Court would decide [the] issue and 'may consider relevant

state precedent, analogous decisions, considered dicta . . . and any other reliable data.'"

*Integrity Floorcovering, Inc. v. Broan-Nutone, L.L.C.*, 521 F.3d 914, 917 (8th Cir. 2008)

(quoting *Kovarik v. Am. Fam. Ins. Grp.*, 108 F.3d 962, 964 (8th Cir. 1997)).

Some lower courts have found that the MHRA requires accommodation of

religion.  *See Benjamin v. Cnty. of Hennepin*, No. C8-96-1122, 1996 WL 679690, at *3 (Minn.

Ct. App. Nov. 26, 1996) ("Religious discrimination claims turn on whether an employer

has 'reasonably accommodated' religious practices in the workplace."); *see also Maroko*

*v. Werner Enters. Inc.*, 778 F. Supp. 2d 993, 998 n.5 (D. Minn. 2011); *Haliye v. Celestica*

*Corp.*, 717 F. Supp. 2d 873, 876 n.1 (D. Minn. 2010).  Recently, however, in a series of

related vaccination-mandate cases, a judge of this Court concluded that "the MHRA

does not obligate employers to provide religious accommodations, [and] state law

claim[s] for failure to accommodate [plaintiffs'] religious beliefs [are] not cognizable."

*Aronson v. Olmsted Med. Ctr.*, No. 22-CV-1594 (ADM/JFD), 2023 WL 2776095, at *5 (D.

Minn. Apr. 4, 2023); *see also Balow v. Olmsted Med. Ctr.*, No. 22-CV-1668 (ADM/JFD),

2023 WL 2776028, at *5 (D. Minn. Apr. 4, 2023); *Bearbower v. Olmsted Med. Ctr.*, No. 22-

CV-2459 (ADM/JFD), 2023 WL 2776029, at *5 (D. Minn. Apr. 4, 2023); *Kehren v. Olmsted

Med. Ctr.*, No. 22-CV-1560 (ADM/JFD), 2023 WL 2776094, at *5 (D. Minn. Apr. 4, 2023);

*Tipcke v. Olmsted Med. Ctr.*, No. 22-CV-2470 (ADM/JFD), 2023 WL 2776098, at *5 (D.

Minn. Apr. 4, 2023).

        This Court respectfully disagrees with the *Olmsted Medical Center* cases and finds

that the MHRA does indeed require employers to reasonably accommodate the

religious practices of their employees.  Minnesota courts (and federal courts applying

Minnesota law) have frequently recognized the "substantial similarities" between the

MHRA and Title VII, and courts routinely apply Title VII case law when analyzing

MHRA claims.  *Sigurdson v. Isanti Cnty.*, 386 N.W.2d 715, 719 (Minn. 1986); *Hunter v.

United Parcel Serv., Inc.*, 697 F.3d 697, 702 (8th Cir. 2012).  Where provisions of the

MHRA are "not similar to provisions of federal anti-discrimination statutes, however,

[Minnesota courts] have departed from the federal rule" in interpreting the MHRA. *McBee v. Team Indus., Inc.*, 925 N.W.2d 222, 228 (Minn. 2019) (quoting *Kolton v. Cnty. of Anoka*, 645 N.W.2d 403, 407 (Minn. 2002)).

Here, the federal and state provisions regarding religious discrimination are almost identical. Both statutes make it unlawful for an employer to "discharge" an employee "because of" the employee's "religion," subject to certain exceptions. *Compare* Minn. Stat. § 363A.08, subd. 2 *with* 42 U.S.C. § 2000e-2(a). And both statutes have been interpreted to allow for employment-discrimination claims based on disparate impact as well as disparate treatment. *See Monson v. Rochester Athletic Club*, 759 N.W.2d 60, 65 (Minn. Ct. App. 2009).

That said, there is one important difference between the statutes' provisions regarding religious discrimination: Only Title VII defines the term "religion." *Compare* Minn. Stat. § 363A.03 *with* 42 U.S.C. § 2000e(j) (defining "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business"). And it is in Title VII's definition of "religion" that the statute explicitly refers to a duty to accommodate. *See* 42 U.S.C. § 2000e(j).

-14-

Despite the textual difference between Title VII and the MHRA, the Court believes that the Minnesota Supreme Court would find that, like Title VII, the MHRA imposes a duty of religious accommodation.  That is because Title VII imposed such a duty *before* it was amended in 1972 to explicitly refer to "accommodation."  *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 63 n.1 (1986).  In other words, Title VII was deemed to impose a duty of religious accommodation at a time when its text was materially indistinguishable from the current text of the MHRA.

Title VII was enacted in 1964.  Soon after, Title VII's "prohibition against religious discrimination . . . raised the question of whether it was impermissible . . . to discharge . . . a person who for religious reasons refused to work during the employer's normal work-week."  *Hardison*, 432 U.S. at 72.  In other words, courts began to grapple with the question of whether and under what circumstances an employer was required to accommodate an employee whose religious beliefs conflicted with the employer's requirements.

In 1966, the EEOC published a guideline that "declared that an employer had an obligation under the statute 'to accommodate . . . the reasonable religious needs of employees . . . where such accommodation can be made without serious inconvenience to the conduct of the business.'"  *Id.* (citing 29 C.F.R. § 1605.1 (1967)).  The EEOC

-15-

amended the guideline in 1967 to include the "reasonabl[e] accommodat[ion]" language that Congress later added to Title VII. *See id.* at 72–73, 76 n.11.

In *Hardison*, the Supreme Court held that it did not need to consider whether the new statutory definition of religion—including its "reasonabl[e] accommodat[ion]" language—was retroactively applicable to events that occurred before Title VII was amended in 1972. *Id.* at 76 n.11. The Court so held because it found that the EEOC's guideline was "entitled to some deference, at least sufficient in this case to warrant . . . accepting the guideline as a defensible construction of the pre-1972 statute." *Id.* In other words, the Supreme Court found that the pre-1972 version of Title VII imposed a duty of religious accommodation. *See* Civil Rights Act of 1964, Pub. L. No. 88-352, §§ 701–03, 78 Stat. 241, 253–57 (1964).

It is critical to note, then, that Title VII's duty to accommodate religion did not originate in 1972, when Congress added the "reasonabl[e] accommodat[ion]" language. Instead, Title VII has imposed a duty to accommodate religion from the beginning. The "reasonabl[e] accommodat[ion]" language was added in 1972 not to *create* such a duty (again, it already existed) but to *limit* that duty. *See* 42 U.S.C. § 2000e(j) (defining "religion" to include "all aspects of religious observance and practice, as well as belief, *unless*" the employer cannot "reasonably accommodate to an employee's or prospective

employee's religious observance or practice without undue hardship" (emphasis

added)).

As noted, the relevant language of the current MHRA is materially identical to

the relevant language of the pre-1972 version of Title VII.  Both prohibit an employer to

"discharge" an employee "because of . . . religion."  42 U.S.C. § 2000e-2; Minn. Stat.

§ 363A.08, subd. 2.  As also noted, in interpreting language in the MHRA that is

materially identical to corresponding language in Title VII, Minnesota courts have

almost invariably interpreted the MHRA's language in a manner that is consistent with

how federal courts have interpreted Title VII's language.  This leads the Court to believe

that, just as federal courts interpreted Title's VII's prohibition on "discharg[ing]" an

employee "because of . . . religion" to impose a duty to accommodate, the Minnesota

Supreme Court would interpret the MHRA's prohibition on "discharg[ing]" an

employee "because of . . . religion" to do likewise.

The Court's conclusion is bolstered by decisions of courts of other states that

have looked to federal law for guidance in determining whether state laws that prohibit

religious discrimination, but say nothing explicit about accommodation, impose a duty

to accommodate religion.  For example, the Washington Supreme Court relied on

Title VII's history (recounted above) when holding that the Washington Law Against

Discrimination (WLAD) "creates a cause of action for failure to reasonably

accommodate an employee's religious practices," notwithstanding the WLAD's silence on religious accommodation. *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 201, 203 (Wash. 2014). In reaching that holding, the court also observed that Washington law, like Title VII, "prohibits employment practices that are discriminatory in *effect* as well as those based on discriminatory *intent.*" *Id.* at 201–02 (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30 (1971), and *Fahn v. Cowlitz Cnty.*, 610 P.2d 857 (Wash. 1980), *amended sub nom. Fahn v. Civ. Serv. Comm'n of Cowlitz Cnty.*, 621 P.2d 1293 (Wash. 1981)); *cf. Monson*, 759 N.W.2d at 65 (explaining that a plaintiff may prove employment discrimination in violation of the MHRA based on disparate impact). Noting that "Washington courts construe the WLAD's protections broadly," the court held that the WLAD imposed a duty on employers to accommodate their employees' religious practices. *Kumar*, 325 P.3d at 202–03; *see also Me. Hum. Rts. Comm'n v. Loc. 1361, United Paperworkers Int'l Union AFL-CIO*, 383 A.2d 369, 378 (Me. 1978) (observing that "any discharge based upon religion would be a violation" of the Maine Human Rights Act—which did not explicitly refer to accommodations—unless that law were interpreted to require employers to make only accommodations that were reasonable and did not present undue hardship).

One could argue that the MHRA's failure to expressly define "religion" as including "all aspects of religious observance and practice," *see* 42 U.S.C. § 2000e(j)—or,

indeed, to define religion at all, *see* Minn. Stat. § 363A.03—suggests that the MHRA

protects only *belief*, rather than "observances or practices" compelled by those beliefs.

In other words, one could argue that, although an employer cannot fire an employee for

*believing* that she should not work on the sabbath, an employer can fire an employee for

refusing to *work* on the sabbath on account of that belief.

But such a narrow interpretation of "religion" is at odds with how the MHRA

itself directs that it should be construed.  "The MHRA is a remedial act that should be

'construed liberally,' Minn. Stat. § 363A.04, in order to accomplish its purpose of

'secur[ing] for persons in this state, freedom from discrimination,' Minn. Stat. § 363A.02,

subd. 1(a)."  *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 795 (Minn. 2013).

Interpreting "religion" as that term is used in the MHRA to be narrower than "religion"

as that term is used in Title VII would conflict with the MHRA itself, as well as with the

longstanding practice of the Minnesota courts to interpret the MHRA to provide no less

protection than Title VII.  *See Sigurdson*, 386 N.W.2d at 719 (noting the practice of

interpreting the MHRA with reference to Title VII principles).

Finally, the Court acknowledges that the MHRA contains a provision titled

"Reasonable Accommodation" that is separate from the MHRA prohibition on

discharging employees because of race, religion, disability, or other protected

characteristics.  This "Reasonable Accommodation" provision mentions only

disabilities, omitting any reference to religion. *See* Minn. Stat. § 363A.08, subd. 6. The

*Olmsted Medical Center* cases regarded this omission as significant evidence that the

Minnesota Legislature did not intend the MHRA to require employers to accommodate

their employees' religions. *Aronson*, 2023 WL 2776095 at *4.

Again, this Court respectfully disagrees. A claim of failure to accommodate

religion—such as plaintiffs' claims under Title VII and the MHRA—is not a

freestanding cause of action that creates liability when an employer merely declines to

accommodate an employee's religion (such as by denying a request not to work on

Sundays) but otherwise does not take an adverse action against the employee.[2] By

---

[2]      *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771–72 (2015)
(evaluating a Title VII failure-to-accommodate claim as a disparate-treatment claim, and
confirming that Title VII sets forth no freestanding failure-to-accommodate claim); *Jones
v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003) (treating adverse action as an
element of a Title VII failure-to-accommodate claim); *see also Exby-Stolley v. Bd. of Cnty.
Comm'rs*, 979 F.3d 784, 793 n.3 (10th Cir. 2020) (en banc) (noting that, "whereas under
the ADA a failure-to-accommodate claim is a freestanding claim of discrimination
based on a failure to meet an affirmative duty, . . . Title VII does not have such a
freestanding claim"); *Walker v. Indian River Transp. Co.*, No. 8:15-CV-2246-T-27TGW,
2017 WL 388921, at *7 (M.D. Fla. Jan. 27, 2017), *aff'd*, 741 F. App'x 740 (11th Cir. 2018)
(holding that an employee whose request for a religious accommodation was denied
could not recover under Title VII because "[he] was never subjected to an adverse
employment action or otherwise disciplined"); *EEOC v. JBS USA, LLC*, 339 F. Supp. 3d
1135, 1176 (D. Colo. 2018) ("The Court agrees . . . that freestanding religious
accommodation claims are not viable in light of *Abercrombie*."); *EEOC v. Jetstream
Ground Servs., Inc.*, No. 13-CV-02340-CMA-KMT, 2016 WL 879625, at *3–5 (D. Colo. Mar.
8, 2016) (rejecting argument "that an employer has an affirmative duty to accommodate
an employee's religious practice, such that an employer's mere failure to make a
religious accommodation—*without more*—constitutes a distinct, 'freestanding' cause of
                                                                          (continued...)

contrast, the MHRA's "Reasonable Accommodation" provision may require affirmative

steps to accommodate disabilities even when an employer does not take adverse action

(aside from the failure to accommodate itself).  *See Hoover v. Norwest Priv. Mortg.*

*Banking*, 632 N.W.2d 534, 547 (Minn. 2001), *as corrected on denial of reh'g* (Sept. 6, 2001)

(holding that, "in order to maintain a reasonable accommodation claim [under the

MHRA], Hoover [was] required to establish that Norwest knew of her disability and

failed to make a reasonable accommodation for that disability").[3]  In other words, the

very act of failing to "mak[e] facilities readily accessible to and usable by individuals

_____

[2](...continued)
action under Title VII").

[3]       The Eighth Circuit stated in a case involving "reasonable accommodation [of a
disability] and disability discrimination claims" under the MHRA (but no federal
claims) that a plaintiff alleging failure to accommodate disability "must show that he
suffered an adverse employment action because of his disability."  *Kammueller v. Loomis,
Fargo & Co.*, 383 F.3d 779, 781, 788 (8th Cir. 2004).  But in support of that proposition, the
court relied on a prior case's description of the elements of a *discriminatory discharge*
claim.  *Id.* (citing *Liljedahl v. Ryder Student Transp. Servs., Inc.*, 341 F.3d 836, 841 (8th Cir.
2003)).   The case that the court cited also addressed an MHRA failure-to-accommodate
claim, but did so without mentioning a separate adverse-action requirement.

          In any event, to the extent that *Kammueller* suggested that a plaintiff would fail to
state a claim for failure to accommodate a disability under the MHRA if she did not
prove an adverse action separate from the failure to accommodate itself, that suggestion
would be dicta, because the *Kammueller* court concluded that the plaintiff there *had*
shown an adverse action (discharge from employment).  *Id.*; *Sanzone v. Mercy Health*,
954 F.3d 1031, 1039 (8th Cir. 2020), *as corrected* (Apr. 9, 2020) ("Dicta is a judicial
comment made while delivering a judicial opinion, but one that is unnecessary to the
decision in the case and therefore not precedential." (cleaned up)).

with disabilities," Minn. Stat. § 363A.08, subd. 6(a)—even in the absence of discharge,

failure to hire, or other adverse action—might give rise to liability under the MHRA's

"Reasonable Accommodation" provision.  Because the MHRA's disability-

accommodations provision, so understood, requires more than refraining from

disability-based discharge, failure to hire, or other forms of discrimination already

prohibited by Minn. Stat. § 363A.08, subd. 2, the Court does not construe the MHRA's

lack of explicit language regarding accommodating *religion* as compelling evidence that

the MHRA imposes no such duty whatsoever.  At bottom, the Court doubts that the

Minnesota Supreme Court would interpret the MHRA to permit an employer to fire an

employee instead of reasonably accommodating her religion, which is what plaintiffs

allege in this case.

For these reasons, the Court predicts that the Minnesota Supreme Court would

conclude that the MHRA requires employers to reasonably accommodate the religious

practices of their employees to the same extent that Title VII requires such an

accommodation.  The Court has already held that plaintiffs have pleaded plausible

failure-to-accommodate claims under Title VII.  Necessarily, then, they have pleaded

plausible failure-to-accommodate claims under the MHRA.

*D.  Count III—Disability Discrimination Under the ADA*

Plaintiffs assert two types of claims under the ADA.  First, they argue that

Seasons' COVID-19 vaccination requirement violated the ADA's prohibition against

medical examinations and disability inquiries that are neither job-related nor consistent

with business necessity.  Second, plaintiffs argue that Seasons, by denying plaintiffs'

requests for medical exemptions to the vaccination requirement, failed to accommodate

plaintiffs' disabilities as required by the ADA.

1.  Administrative Exhaustion

A plaintiff alleging a violation of the ADA must file a charge with the

appropriate administrative agency and receive a right-to-sue letter before commencing

a lawsuit in federal court.  *McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740 n.3 (8th

Cir. 1996) (per curiam).  Seasons argues that Moen failed to exhaust her administrative

remedies with respect to her ADA claim because her EEOC charge alleged only

religion-based discrimination under Title VII, without mentioning disability-based

discrimination under the ADA.[4]  Moen contends that the disability discrimination she

now alleges is sufficiently related to the substance of her EEOC charge to allow her to

litigate the ADA claim.

---

[4]      "[A]n EEOC charge is a part of the public record and may be considered on a
motion to dismiss."  *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011).

"A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994).  The predicate EEOC charge thus "need not specifically articulate the precise claim" that a plaintiff brings to court, but the charge "must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 697 (8th Cir. 2009) (cleaned up).  "Since the purpose of requiring plaintiff to first file a charge with the EEOC is to facilitate the EEOC's investigatory and conciliatory role, the sweep of the administrative charge is as 'broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination.'" *Simmons v. New Pub. Sch. Dist. No. Eight*, 251 F.3d 1210, 1216 (8th Cir. 2001) (en banc) (quoting *Kells v. Sinclair Buick–GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000)), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

Here, Moen's allegation of disability discrimination falls outside the scope of an EEOC investigation that would reasonably be expected to arise from her allegation of religious discrimination.  Moen's EEOC charge specifically and exclusively lists "Religion" as the basis of the discrimination she allegedly experienced.  Van Rybroek

-24-

Decl. Ex. E, Case No. 22-CV-1923 (PJS/JFD), ECF No. 10-1, at 14 (hereinafter "Moen EEOC Charge").  Her charge explains that Seasons required all employees to obtain COVID-19 vaccinations and states that Moen requested a "religious accommodation" that was denied.  *Id.*  The charge does not even mention Seasons' policy to deny medical and non-religious personal exemptions.  *Id.*  Moen's charge offered no hint that Moen had a disability or even that she had medical concerns, much less that Seasons had refused to accommodate that disability or those concerns.  *Id.*; *cf. Williams*, 21 F.3d at 222–23.  The Court therefore dismisses Moen's ADA claim without prejudice.  *See Calico Trailer Mfg. Co. v. Ins. Co. of N. Am.*, 155 F.3d 976, 978 (8th Cir. 1998).

### 2.  Unlawful Examination or Medical Inquiry

As noted, plaintiffs allege that Seasons' vaccination requirement violated the ADA's prohibition on requiring medical examinations or making "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).  Specifically, plaintiffs claim that Seasons' vaccination requirement violated this provision because an inquiry into vaccination status—as would be necessary to

determine compliance with the vaccination mandate—could reveal whether employees

have "long COVID," which plaintiffs characterize as a disability.[5]

Plaintiffs concede that they do not know of a single case in which such a claim

has succeeded.  Nor has the Court found any such case, and for good reason.  Plaintiffs'

concerns about the vaccination mandate's capacity to reveal disability status make no

sense.  Plaintiffs fail to explain how a simple inquiry into vaccination status—"have you

been vaccinated for COVID?"—would require an employee to disclose any information

about a disability.[6]  If the employee answers "yes," the employer would know nothing

about her health except that she's been vaccinated.  If the employee answers "no," the

employer would know nothing about her health except that she's not been vaccinated.

The employer would have no idea *why* the employee had not been vaccinated—whether

it was because of laziness, or religious belief, or medical concerns, or natural immunity

acquired through a recent infection.  And because the employer would have no idea

whether the employee had ever been infected with COVID-19, the employer would

---

[5]     "Long COVID" or "Post-COVID Conditions" refer to long-term effects from a COVID-19 infection.  Ctrs. for Disease Control and Prevention, *Long COVID*, https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/ (last visited September 28, 2023).

[6]     Plaintiffs challenge only Seasons' vaccination requirement.  At the hearing and in their briefing, plaintiffs make clear that they are not challenging Seasons' requirement to test for COVID-19.  The Court therefore need not determine whether such testing was "job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).

certainly have no idea whether the employee was suffering from long COVID.

Guidance from the EEOC confirms that asking about vaccination does not violate the

ADA's medical-inquiry provision.  *See* EEOC COVID-19 Guidance § K.9 ("requesting

documentation or other confirmation of vaccination is not a disability-related inquiry

under the ADA, and the ADA's rules about making such inquiries do not apply").  U.S.

Equal Emp. Opportunity Comm'n, *What You Should Know About COVID-19 and the*

*ADA, the Rehabilitation Act, and Other EEO Laws*, https://www.eeoc.gov/wysk/

what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

(last visited Sept. 28, 2023).

     In short, plaintiffs' allegations do not support a plausible claim that Seasons

violated the ADA's prohibition against medical examinations and inquiries.  The Court

therefore dismisses these claims with prejudice.

### 3.  Failure to Accommodate

     Finally, plaintiffs allege that Seasons failed to accommodate their disabilities in

violation of the ADA.  *See* 42 U.S.C. § 12112(b)(5)(A) (defining disability discrimination

to include failure to accommodate unless accommodation would impose an undue

hardship).

     To prevail on a claim for failure to accommodate a disability, a plaintiff must

"establish both a prima facie case of discrimination based on disability and a failure to

accommodate it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015).  Plaintiffs' allegations make both of these showings plausible.

### a. Prima Facie Case

To establish a prima facie case of disability discrimination, a plaintiff must show that she "(1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action due to [her] disability." *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 456 (8th Cir. 2022) (citing *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007)).  The ADA defines a "disability" to include "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).  Major life activities include the "operation of a major bodily function," including "functions of the immune system."  *Id.* § 12102(2)(B).  "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."  *Id.* § 12102(4)(D).

As noted, Robsahm alleges that she had cancer that was in remission, and that her "immune system is weakened."  This is sufficient to plausibly allege that she had a disability.  *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 756 (8th Cir. 2016) (the plaintiff's cancer, "even while in remission," was "clearly a covered disability under the ADA").

Whether Lee plausibly alleges that she had a disability is a closer question.  Lee claims that she "suffered nausea, dizziness and weakness, paralysis, and other effects

requiring hospitalization after a previous vaccination" and was "at risk for suffering strokes" from a COVID-19 vaccine.  The Court agrees with Seasons that the complaint offers few details linking these health concerns to an identifiable "impairment," whether episodic or otherwise.  But the Court will defer deciding whether Lee has a "disability" within the meaning of the ADA until it has a full factual record.

Seasons also argues that plaintiffs have failed to plausibly allege that they are qualified to perform their jobs.  Specifically, Seasons argues that ensuring patient safety is an essential function of plaintiffs' jobs and that plaintiffs would not be qualified to perform that function without being vaccinated against COVID-19.  But this argument fails to persuade the Court that it is *implausible* that plaintiffs were qualified to perform their essential job functions.  To begin with, this question turns on facts that are not before the Court on this motion to dismiss.  More importantly, plaintiffs allege that they *did* perform their essential job functions while unvaccinated, to Seasons' satisfaction, before COVID-19 vaccines became available.  The Court therefore finds that plaintiffs have adequately pleaded a prima facie case.

### b.  Failure to Accommodate

Plaintiffs have also plausibly alleged that they "could have been reasonably accommodated but for the employer's lack of good faith."  *Schaffhauser*, 794 F.3d at 906 (quoting *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009)).

Specifically, plaintiffs allege that the "status quo" during which Seasons encouraged but did not require COVID-19 vaccinations "was working." Lee Am. Compl. ¶ 15; Moen/Robsahm Am. Compl. ¶ 17. According to plaintiffs, non-pharmaceutical measures such as distancing, hand hygiene, and masking had successfully minimized the spread of COVID-19 among Seasons' employees and patients—and Seasons conceded as much. Lee Am. Compl. ¶ 18; Moen/Robsahm Am. Compl. ¶ 20. Thus, the complaints plausibly allege that a reasonable accommodation was possible.

Once a plaintiff has shown that a reasonable accommodation is possible, the burden shifts to the defendant to "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002). Echoing its arguments for dismissing the religious-accommodation claims, Seasons argues that any accommodation allowing plaintiffs to remain unvaccinated would have created "undue hardship." Hardship is "undue" under the ADA only if it involves "significant difficulty or expense," when considered in light of several statutory factors, including "the nature and cost of the accommodation needed," the economic and operational impact on the facility involved, the overall size and resources of the employer, and the employer's "type of operation" including its workforce's structure and functions. 42 U.S.C. § 12111(10)(A)–(B). These factors make clear that, like Title VII's "undue hardship" inquiry, the ADA's "undue

-30-

hardship" inquiry is fact intensive.  For substantially the same reasons that Seasons fails to show undue hardship as a matter of law with respect to plaintiffs' failure-to-accommodate claims under Title VII, Seasons also fails to do so with respect to plaintiffs' failure-to-accommodate claims under the ADA.  The Court therefore denies Seasons' motion to dismiss Lee's and Robsahm's failure-to-accommodate claims under the ADA.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.   In *Lee v. Seasons Hospice*, No. 22-CV-1593 (PJS/DJF), Seasons' motion to dismiss [ECF No. 15] is GRANTED IN PART and DENIED IN PART as follows:

    a.   Count III is DISMISSED WITH PREJUDICE insofar as it asserts a claim to relief pursuant to 42 U.S.C. § 12112(d)(4).

    b.   Count IV is DISMISSED WITHOUT PREJUDICE.

2.   In *Robsahm v. Seasons Hospice*, No. 22-CV-1923 (PJS/JFD), Seasons' motion to dismiss [ECF No. 15] is GRANTED IN PART and DENIED IN PART as follows:

    a.  Count III is DISMISSED WITHOUT PREJUDICE as to Moen.

    b.  Count III is DISMISSED WITH PREJUDICE as to Robsahm insofar as it

asserts a claim to relief pursuant to 42 U.S.C. § 12112(d)(4).

    c.  Count IV is DISMISSED WITHOUT PREJUDICE.

Dated:  September 29, 2023           s/Patrick J. Schiltz
                                         Patrick J. Schiltz, Chief Judge
                                         United States District Court